**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela Stewart,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-24-00925-PHX-KML<br><br>**ORDER** |

Plaintiff Pamela Stewart seeks review of the Social Security Commissioner's final decision denying her disability insurance benefits. Because the Administrative Law Judge's ("ALJ's") decision is supported by substantial evidence and is not based on harmful legal error, it is affirmed.

**I.    Background**

Stewart filed an application for disability insurance benefits on October 18, 2021, alleging a disability beginning January 18, 2021. (Administrative Record ("AR") 15.) The claim was denied initially and upon reconsideration. (AR 15.) After a hearing, an ALJ denied her claim on August 1, 2023. (AR 15, 26.) The Appeals Council denied Stewart's request for review (AR 1), and she then appealed to this court.

**II.    Legal Standard**

The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a

1  preponderance" and is such that "a reasonable mind might accept as adequate to support a
2  conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The court
3  reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*,
4  236 F.3d 503, 517 n.13 (9th Cir. 2001).

**III.  Discussion**

Stewart argues the ALJ committed two materially-harmful legal errors in analyzing her claim: (1) finding Dr. Sherif Nasef's medical opinion unpersuasive; and (2) rejecting Stewart's symptom testimony without adequate justification. Stewart seeks a remand for a calculation of benefits or in the alternative for further administrative proceedings.

**A.  The ALJ's Five-Step Disability Evaluation Process**

Under the Social Security Act, a claimant for disability insurance benefits must establish disability prior to the date last insured. 42 U.S.C. § 423(c); 20 C.F.R. § 404.131. A claimant is disabled under the Act if she cannot engage in substantial gainful activity because of a medically-determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months or more. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

Whether a claimant is disabled is determined by a five-step sequential process. *See Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step three, the claimant must show that her impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant meets her burden at step three, she is presumed disabled and the analysis ends. If not, at step four, the claimant must show her residual functional capacity ("RFC")—the most she can do with her impairments—precludes her from performing her past work. *Id.* If the claimant meets her burden at step four, then at step five the Commissioner must determine if the claimant is able to perform other work that "exists in significant numbers in the national economy"

given the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.*

The ALJ found Stewart had "not engaged in substantial gainful activity" since her disability onset date and that she had a severe impairment[1] for a continuous period of twelve months, satisfying her burden at steps one and two. *Id.* § 404.1520(a)(4)(i)–(ii). (AR 18.) At step three, the ALJ determined Stewart's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment, and at step four that Stewart had the RFC to perform light work with some additional limitations.[2] (AR 20.) In evaluating Stewart's RFC, the ALJ partially discounted Dr. Nasef's medical opinion. (AR 23–24.) The ALJ also discounted Stewart's symptom testimony because it was "not consistent with the medical evidence and other evidence in the record." (AR 21.)

The ALJ used Stewart's RFC to conclude at step five that "there are jobs that exist in significant numbers in the national economy that [she] can perform," so she was not disabled. (AR 24.)

**B.  The ALJ's Evaluation of Dr. Nasef's Medical Opinion**

Stewart contends the ALJ erred in discounting the part of Dr. Nasef's opinion having to do with "her inability to frequently handle and reach more than occasionally in all directions, and not just overhead." (Doc. 13 at 6.) Dr. Nasef filled out a checkbox form regarding Stewart's ability to do work-related physical activities. (AR 620–625.) That form indicated Stewart could reach overhead and handle frequently with the right side, but could only occasionally perform all other types of reaching with the right side and all types of reaching and handling with the left side. (AR 622.) The ALJ found Dr. Nasef's opinion partially persuasive and partially unpersuasive. (AR 23–24.) He found persuasive the portions of Dr. Nasef's opinion indicating Stewart could only lift/carry twenty pounds occasionally and 10 pounds frequently; frequently handle, finger, and feel on her right side;

---

[1] The ALJ found Stewart had the following severe impairments: left shoulder rotator cuff tear, bilateral shoulder tendinitis, systemic lupus erythematosus, and hypothyroidism. (AR 18.)

[2] The ALJ did not analyze at step four if Stewart could perform her past relevant work because she had no past relevant work. (AR 24.)

only occasionally climb ramps/stairs; and never climb ladders/ropes/scaffolding. (AR 23–24.) The ALJ found unpersuasive Dr. Nasef's opinion insofar as it prescribed limitations on Stewart's ability to stand, sit, walk, climb, balance, stoop, kneel, crouch, and crawl because "the conclusions [were] not supported by Dr. Nasef's clinical findings." (AR 24.)

Stewart contends the ALJ did not address crucial aspects of Dr. Nasef's opinion, namely the "occasional" and "frequent" reaching and handling limitations specified for the right and left sides. (Doc. 13 at 8.) But, as the Commissioner points out, the ALJ is "not required to articulate how [he] considered each medical opinion . . . from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). Instead, because of "voluminous case records," the ALJ can "articulate how [he] considered the medical opinions" of a "medical source together in a single analysis." *Id.*; *see Preda v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00026-PHX-DWL, 2022 WL 2045391, at *3 (D. Ariz. June 7, 2022) (noting the ALJ is "not required" to address each of a medical source's opinions). Here, it can be fairly assumed the ALJ did not credit the entirety of Dr. Nasef's reaching and handling opinion for the same reason he found other portions of Dr. Nasef's opinion unpersuasive: because Dr. Nasef's "conclusions [were] not supported by [his] clinical findings." *See Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022) (noting it was not error for an ALJ to "not expressly discuss" a limitation imposed by a medical source because "the reason for the ALJ's rejection of it," that it was "unsupported and inconsistent with other record evidence[,] is evident from his analysis. No more was required"); *Brioso v. Kijakazi*, No. 22-CV-21991-JEM, 2023 WL 5595912, at *6 (S.D. Fla. Aug. 11, 2023), *report and recommendation adopted*, No. 22-21991-CIV, 2023 WL 5563394, at *6 (S.D. Fla. Aug. 29, 2023) (noting an ALJ need not specifically refer to every piece of evidence so long as opinion "contain[s] sufficient detail so that the court can determine that the ALJ considered the claimant's medical condition as a whole."). Stewart's argument that the ALJ erred by not specifically addressing the portion of Dr. Nasef's opinion regarding her reaching and handling limitations fails.

Stewart next argues it was error for the ALJ to find parts of Dr. Nasef's opinion

unpersuasive because that decision was not supported by substantial evidence nor were the required consistency and supportability factors evaluated.[3] (Doc. 13 at 8–16.) For claims filed after 2017 like Stewart's, the most important factors an ALJ considers in evaluating medical opinions are "supportability" and "consistency." *Woods*, 32 F.4th at 791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability" refers to the extent to which a medical source grounds the opinion in an explanation of the relevant objective medical evidence. *Id.* "Consistency" refers to the extent to which the opinion accords with evidence from other medical and nonmedical sources. *Id.* at 792. An ALJ must describe how he considered the supportability and consistency factors when explaining how persuasive he finds a medical opinion. *Id.* But under the 2017 regulations, an ALJ need no longer give special deference to treating physicians, nor provide "specific and legitimate reasons" for rejecting a treating doctor's opinion. *Id.* Instead, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787. Substantial evidence is more than "a mere scintilla but less than a preponderance." *Orn*, 495 F.3d at 630 (quoting *Burch*, 400 F.3d at 679).

The ALJ's decision was supported by substantial evidence here. As to consistency, Stewart argues the ALJ did not properly consider the consistency of Dr. Nasef's opinion because doing so "would have alerted the ALJ to the fact that no other treating or examining physician disputed Dr. Nasef's RFC opinion." (Doc. 13 at 11.) She relies on the ALJ's decision to discount the opinions of two state medical consultants who opined that Stewart could reach and handle more frequently than Dr. Nasef believed. (*See* AR 23.) But elsewhere, the ALJ also pointed to inconsistent medical evidence from a neurologist who reported Stewart had a normal range of motion in the neck and extremities and no tenderness to palpation. (AR 23.) The ALJ also imposed greater limitations on reaching and handling than the discounted state medical consultants based on objective evidence

---

[3] Stewart also contends "the ALJ's recitation of the medical evidence failed to include [her] rotator cuff tear impairment." (Doc. 13 at 10.) As the Commissioner points out, that is incorrect. (*See* AR 18 (noting Stewart's "left shoulder rotator cuff tear[ ]" was a "severe impairment[ ]"); 21 (describing a medical center visit where Stewart presented with shoulder pain and an MRI showed "nontraumatic rotator cuff [injury] of both shoulders")).

and Stewart's own testimony. (AR 23.) The ALJ's consistency determination is therefore supported by substantial evidence even after the consultants' opinions were discounted. *See Harrington o/b/o G.M.D. v. O'Malley*, No. 2:23-CV-02053-MDC, 2024 WL 4785365, at *4 (D. Nev. Nov. 13, 2024) (noting the ALJ's non-disability determination was "well-supported by substantial evidence, including . . . conflicting medical opinions[.]").

As to supportability, the ALJ adequately discussed how the objective evidence showed largely normal findings in the upper extremities and did not support more restrictive limitations. (*See* AR 21–23, 711, 906, 950–51, 975.) For example, a physical exam showed Stewart's upper extremities were in normal condition despite her reporting some shoulder abduction pain. (AR 906.) And "no acute fracture or traumatic malalignment[ ]" was found in her right shoulder nor were there "significant osteoarthritic changes," and "[t]he acromioclavicular joint [was] maintained." (AR 950.) That same study found her shoulder soft tissues unremarkable. (AR 950.) Stewart argues the ALJ lacked substantial evidence to discount the portion of Dr. Nasef's opinion contradicting these objective findings, but this argument fails. *See Jami B. v. Comm'r of Soc. Sec.*, No. C20-5012-MLP, 2020 WL 5203587, at *5 (W.D. Wash. Sept. 1, 2020) ("The ALJ reasonably discounted [a medical] opinion because of the noted conflict with the other objective medical evidence in the record.").

The ALJ properly assessed the supportability and consistency of Dr. Nasef's opinion and reasonably concluded that Stewart's upper extremity impairments did not cause the degree of limitations he assessed. For these reasons, Stewart's argument that the ALJ erred by partially discounting Dr. Nasef's opinion fails.

### C. The ALJ's Evaluation of Stewart's Symptom Testimony

Stewart argues the ALJ erred by discounting her "subjective allegations" from her symptom testimony regarding her upper extremity limitations. (Doc. 13 at 16.) When a claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to cause the severity of the symptoms alleged and there is no evidence of malingering, an ALJ may only reject subjective symptom-severity testimony

by offering "specific, clear and convincing reasons for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). Such findings are sufficiently specific when they permit a reviewing court to conclude the ALJ "did not arbitrarily discredit [a] claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (simplified), *superseded on other grounds by* 20 C.F.R § 404.1502(a). The ALJ did not find that Stewart was malingering. So, the ALJ could only discredit her symptom testimony by providing "specific, clear and convincing" reasons for doing so. *Revels*, 874 F.3d at 655

Stewart contends the ALJ improperly discounted her symptom testimony because he relied solely on the objective medical evidence. (Doc. 13 at 18.) "[A]n ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'" *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)). But the ALJ did not do so here. As the Commissioner points out, the ALJ also discounted Stewart's testimony based on her "improvement with treatment [which] undermined her subjective complaints[ ]" (Doc. 16 at 10 (citing AR 21, 23)), and "based on her activities" (Doc. 16 at 11 (citing AR 21)). For example, Stewart "alleged severe difficulty in reaching and grasping" (Doc. 16 at 11 (citing AR 42–43, 46–47)), "but she reported that she could perform a variety of activities requiring such manipulative abilities, such as doing laundry, washing dishes, shopping for food, clothing, and medication, and driving." (Doc. 16 at 11 (citing AR 21, 253, 255).) Stewart's argument that the ALJ improperly relied only on objective medical evidence to discount her symptom testimony therefore fails.

Stewart also alleges the ALJ erred by discounting her symptom testimony without referring to specific portions of her testimony. (Doc. 13 at 19.) An ALJ can commit legal error by "fail[ing] to identify which testimony she found not credible and why." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). But the Ninth Circuit' "do[es] not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do[es] [it] require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266,

1277 (9th Cir. 2020). However, something more than a "non-specific conclusion that [the claimant's] testimony was inconsistent with her medical treatment is required." *Id.*

The ALJ properly evaluated Stewart's testimony. He described it at length in one paragraph—mentioning how she testified that "she has difficulty moving her body parts without pain or swelling" and that "she gets weaker when she attempts to do more"—but ultimately decided in the following paragraph that while her testimony "could reasonably be expected to cause [her] alleged symptoms[,]" the "intensity, persistence, and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." (AR 21.) He then cited contradicting medical evidence at length. (*See* AR 21–23.) The ALJ thus provided substantial evidence for his decision to discount Stewart's symptom testimony and did not err in his analysis of it. *See Jennings v. Saul*, 804 F. App'x 458, 463 (9th Cir. 2020) (noting an ALJ's decision to discount a claimant's symptom testimony was supported by substantial evidence such as inconsistency with the objective medical evidence and contradictions with the claimant's daily activities).

## IV.   Conclusion

Stewart's contention that the ALJ erred in discounting the medical opinion of Dr. Nasef and her symptom testimony fails. The ALJ provided substantial evidence for both of these conclusions and did not commit legal error in either analysis.

**IT IS ORDERED** affirming the August 1, 2023, decision of the ALJ.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 19th day of March, 2025.

Honorable Krissa M. Lanham
United States District Judge